```
                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF TEXAS
                            HOUSTON DIVISION


RAJESHWARI YOG,                    §
                                   §
              Plaintiff,           §
                                   §
v.                                 §
                                   §    CIVIL ACTION NO. H-08-3034
TEXAS SOUTHERN UNIVERSITY          §
and DR. GOVINDARAJAN RAMESH,       §
Individually and in His            §
Official Capacity,                 §
                                   §
              Defendants.          §
```

**MEMORANDUM OPINION AND ORDER**

The live claims remaining in this action are claims that plaintiff, Rajeshwari Yog, has asserted against defendant, Texas Southern University ("TSU"), pursuant to Title IX of the Education Act Amendments of 1972, 20 U.S.C. § 1681, et seq. ("Title IX"). Plaintiff's live claims are based on allegations of sexual harassment and retaliation. Pending before the court are Texas Southern University's Objections to Magistrate Judge's Memorandum and Recommendations ("TSU's Objections") (Docket Entry No. 71) and Plaintiff's Response to Texas Southern University's Objections to Magistrate Judge's Memorandum and Recommendation ("Plaintiff's Response to TSU's Objections") (Docket Entry No. 72). For the reasons explained below, TSU's objections will be overruled.

## I.  Factual and Procedural Background

The factual and procedural background of this action are set forth in detail in the Memorandum, Recommendation and Order (Docket Entry No. 70) signed by Magistrate Judge Nancy K. Johnson on August 30, 2010.  Judge Johnson explained that the only two claims remaining in this action are claims that the plaintiff has asserted against TSU under Title IX, 20 U.S.C. § 1681, for excluding her from participation in, denying her the benefits of, and/or subjecting her to discrimination in an educational program receiving federal funding, and retaliating against her for opposing conduct that violated Title IX.  TSU sought summary judgment on both claims,[1] and also sought an order striking plaintiff's second surreply to defendant's motion for summary judgment.[2]  In the Memorandum, Recommendation and Order signed on August 30, 2010, Judge Johnson recommended granting TSU's motion for summary judgment on plaintiff's claim that TSU retaliated against her for opposing conduct that violated Title IX and denying TSU's motion for summary judgment on plaintiff's substantive Title IX claim, and denying TSU's motion to strike plaintiff's second surreply.  TSU

---

[1]Defendant Texas Southern University's Motion for Summary Judgment and Brief in Support ("TSU's Motion for Summary Judgment"), Docket Entry No. 56.

[2]Defendant Texas Southern University's Motion to Strike Plaintiff's Second Sur-reply to Texas Southern University's Motion for Summary Judgment ("TSU's Motion to Strike"), Docket Entry No. 68.

objects to Judge Johnson's recommendation to deny its motion for summary judgment on plaintiff's substantive Title IX claim.

## II. Analysis

TSU objects to Judge Johnson's recommendation to deny its motion for summary judgment on plaintiff's substantive Title IX claim on grounds that (1) plaintiff's claim is not covered by Title IX, and (2) Keisha David was not an "appropriate person" under Title IX to place TSU on notice of the alleged harassment.

### A. Plaintiff's Claim is Covered by Title IX

In both its motion for summary judgment and its objections to the Magistrate Judge's memorandum and recommendations, TSU argues that plaintiff's allegations that Dr. Ramesh sexually harassed her are not covered by Title IX because plaintiff was an employee and not a student when the alleged harassment occurred.  TSU argues that plaintiff should have brought her claims under Title VII for discrimination in employment instead of under Title IX for discrimination in education.  Citing Cuddeback v. Florida Board of Education, 381 F.3d 1230 (11th Cir. 2004), TSU contends that because "Plaintiff was both a student and an employee, the court must engage in an analysis to determine whether the work [plaintiff] performed . . . was primarily for remuneration or academics to determine if her claim is really a Title IX claim or actually a Title VII claim."[3]  In support of its argument that

---

[3]TSU's Objections, Docket Entry No. 71, pp. 2-3.

plaintiff was an employee under the Cuddeback analysis TSU cites evidence that during plaintiff's "second year at TSU, her family could no longer pay for her tuition and fees,"[4] that plaintiff "offered and agreed to work more than 20 hours a week in exchange for payment of tuition and fees,"[5] and that "Plaintiff expected her tuition and fees to be paid, but Ramesh withheld or was late with these payments."[6]

In Cuddeback, 381 F.3d 1230, the plaintiff was a graduate student research assistant who brought suit under Title VII against the defendant for gender discrimination. When the defendant sought summary judgment on grounds that the plaintiff was a student and not an employee able to sue under Title VII, the Eleventh Circuit applied an economic realities test to determine whether the plaintiff was an employee for Title VII purposes. Considering common law factors such as "whether the defendant directed the plaintiff's work and provided or paid for the materials used in the plaintiff's work," id. at 1234, the Eleventh Circuit concluded that the fact that much of the plaintiff's work in the university lab was done for academic purposes weighed in favor of finding her a student, but that the following factors led to the conclusion that

---

[4] Id. at 2 (citing Exhibit 1 attached to TSU's Motion for Summary Judgment, Docket Entry No. 56, p. 37, lns. 15-25).

[5] Id. (citing Exhibit 1 attached to TSU's Motion for Summary Judgment, Docket Entry No. 56, p. 37, ln. 15 - p. 39, ln. 9).

[6] Id. (citing Exhibit 1 attached to TSU's Motion for Summary Judgment, Docket Entry No. 56, p. 39, ln. 10 - p. 40, ln. 5).

the plaintiff was an employee for Title VII purposes: (1) she received a stipend and benefits for her work; (2) she received sick and annual leave; (3) her employment was governed by a comprehensive collective bargaining agreement; (4) she used university equipment and training in her work; and (5) the decision to renew her appointment was based on employment as opposed to academic factors. Id. at 1234-35.

Courts faced with determining whether a plaintiff is primarily a student or primarily an employee have employed reasoning similar to that in Cuddeback and focused on the nature of the plaintiff's relationship with the educational institution and whether attendant academic factors outweigh attendant economic factors. Compare Jacob-Mua v. Veneman, 289 F.3d 517, 520-21 (8th Cir. 2002) (considering relevant economic factors in finding that the plaintiff, a volunteer researcher, was not an employee for Title VII purposes because she was not paid, did not receive annual and sick leave benefits or coverage under any retirement program, and she was not entitled to merit promotion, holiday pay, insurance benefits, or competitive status); with Ivan v. Kent State University, 863 F.Supp. 581, 585-86 (N.D. Ohio 1994), aff'd, 92 F.3d 1185 (6th Cir. 1996) (employing economic realities test, the court found that a graduate student assistant was an employee, relying on the fact that her service to the university was governed by three contracts, she earned a monthly graduate assistantship stipend, and the university withheld from her pay state retirement

benefit contributions and agreed to pay her compensation in compliance with state and federal law).

Application of the economic realities test applied in Cuddeback to the facts of this case does not lead to the conclusion that plaintiff was primarily an employee and not primarily a student when the alleged harassment occurred. The evidence that TSU cites showing that during plaintiff's "second year at TSU, her family could no longer pay for her tuition and fees,"[7] that plaintiff "offered and agreed to work more than 20 hours a week in exchange for payment of tuition and fees,"[8] and that "Plaintiff expected her tuition and fees to be paid, but Ramesh withheld or was late with these payments," weigh in favor of finding that plaintiff was a student when the alleged harassment occurred. Moreover, TSU has failed to cite any evidence comparable to the evidence presented by the defendant in Cuddeback, 381 F.3d 1234-35, where the Eleventh Circuit concluded that the graduate student plaintiff was an employee for Title VII purposes, *i.e.,* evidence showing that (1) the plaintiff received a stipend and benefits for her work; (2) she received sick and annual leave; (3) her employment was governed by a comprehensive collective bargaining agreement; (4) she used university equipment and training in her

---

[7] Id. at 2 (citing Exhibit 1 attached to TSU's Motion for Summary Judgment, Docket Entry No. 56, p. 37, lns. 15-25).

[8] Id. (citing Exhibit 1 attached to TSU's Motion for Summary Judgment, Docket Entry No. 56, p. 37, ln. 15 - p. 39, ln. 9).

work; and/or (5) the decision to renew her appointment was based on employment as opposed to academic factors. Nor has TSU submitted any evidence like that presented by the defendant in Ivan, 863 F.Supp. at 585-86, where the court concluded that the plaintiff was primarily an employee whose claims against the defendant university should be considered under Title VII, *i.e.*, that (1) the plaintiff's service to the university was governed by three contracts; (2) she earned a monthly graduate assistantship stipend; (3) the university withheld from her pay state retirement benefit contributions; and (4) the university agreed to pay her compensation in compliance with state and federal law. Although TSU has cited evidence showing that the plaintiff was financially dependent on her ability to work in Dr. Ramesh's laboratory, TSU does not dispute the plaintiff's evidence that she would not have been eligible to work there had she not been a student, and has failed to cite any evidence comparable to that relied upon by the Cuddeback and Ivan courts to conclude that those plaintiffs were employees for Title VII purposes. TSU's objection to the Magistrate Judge's conclusion that plaintiff's claim for sexual harassment may be asserted under Title IX will therefore be overruled.

**B.   Whether Keisha David was an "Appropriate Person" is a Genuine Issue of Material Fact for Trial**

In both its motion for summary judgment and its objections to the Magistrate Judge's memorandum and recommendations, TSU argues

that plaintiff's report of Dr. Ramesh's allegedly harassing conduct to Keisha David is insufficient to show that TSU was placed on notice of the alleged conduct because David was not an "appropriate person" under Title IX.  Citing Gebser v. Lago Vista Indep. Sch. Dist., 118 S.Ct. 1989 (1998), TSU objects to the Magistrate Judge's conclusion that its argument is without merit because

> [t]hough Keisha David was the compliance office[r] who accepted reports of sexual harassment, she testified . . . that she did not have supervisory authority to discipline Ramesh.  Though the court believed that Plaintiff need only make a complaint to a person authorized to "institute corrective measures on behalf of the school," that assessment is not completely accurate.[9]

TSU explains that

> Gebser requires that an "appropriate person" at least be an official with authority to (1) address the alleged discrimination (i.e. investigation) **and** (2) institute corrective measures on behalf of TSU. . . Though the court determined that it was sufficient for Ms. David to have the authority to initiate an investigation, the Fifth Circuit actually found liability for sexual harassment of a student by a school employee under Title IX if the person who received the report was: (1) a school official, (2) who was invested by the school board with the duty to supervise the employee, (3) had actual knowledge of the abuse, (4) had the power to take action to end the abuse, and (5) failed to do so. Rosa H. v. San Elizario Indep. Sch. Dist., 106 F.3d 648, 660 (5th Cir. 1997).[10]

Citing this court's opinion in Alegria v. Texas, No. G-06-0212, 2007 WL 3256586, *4 (S.D. Tex. Nov. 2, 2007), aff'd, 314 Fed.Appx. 687 (5th Cir. 2009), TSU contends that

---

[9]Id. at 5.

[10]Id.

> [b]ased on the uncontroverted evidence presented to the magistrate court, Keisha David's only authority was to conduct an investigation and report the results of the investigation to the Provost, Bobby Wilson . . . The TSU Sexual Harassment Investigation Procedures specifically define the scope of the compliance officer's authority, which is to initiate an investigation (§3), draft an initial report (§4), prepare a final report (§5), and submit that final report to the accused employee's supervisor, or if the employee is a faculty member, submit the report to the Provost (§5). . . . This is not sufficient to confer institutional liability because David could not implement corrective measures. . . Though the magistrate court determined that it was enough that Ms. David could "set in motion the disciplinary process upon completion of her investigation," . . . the District Court requires a showing that Ms. David has supervisory authority over Ramesh before liability may be imposed.[11]

A series of cases culminating with the Supreme Court's opinion in Gebser, 118 S.Ct. at 1989, "hold that schools sued for harassment under Title IX must have actual knowledge of the harassment and cannot be liable on a theory of strict liability." Pederson v. Louisiana State University, 213 F.3d 858, 882 (5th Cir. 2000) (citing Gebser, 118 S.Ct. at 1997, Rosa H. v. San Elizario Indep. Sch. Dist., 106 F.3d 648, 652-53 (5th Cir. 1997), and Canutillo Indep. Sch. Dist. v. Leija, 101 F.3d 393, 398-400 (5th Cir.), cert. denied, 117 S.Ct. 2434 (1997)). In Gebser the Supreme Court explained that

> [b]ecause the express remedial scheme under Title IX is predicated upon notice to an "appropriate person" and an opportunity to rectify any violation, 20 U.S.C. § 1682, we conclude, in the absence of further direction from Congress, that the implied damages remedy should be fashioned along the same lines. An "appropriate person"

---

[11] Id. at 8-9.

> under § 1682 is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination. Consequently, in cases like this one that do not involve official policy of the recipient entity, **we hold that a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond.**

118 S.Ct. at 1999 (emphasis added). Based on this passage from Gebser, TSU can be held liable under Title IX for Dr. Ramesh's sexual harassment of the plaintiff only if a TSU official "who at a minimum ha[d] authority to address the alleged discrimination and to institute corrective measures" had "actual knowledge of the discrimination" and "fail[ed] adequately to respond." Id.

Plaintiff alleges and TSU does not dispute that David served as TSU's sexual harassment "compliance manager" and had actual knowledge of the alleged discrimination. Judge Johnson concluded that

> . . . Gebser only requires that the appropriate person be authorized to institute corrective measures on behalf of the school . . . Here, TSU's compliance officer clearly had the authority to initiate the corrective measures process, the first step of which was working with the human resources director and the Office of the General Counsel. There is no legal requirement that the person to whom the complaint is made be able to discipline the offending person solely on her own. It is enough here that the compliance officer had the authority to set in motion the disciplinary process upon completion of her investigation.[12]

---

[12]Memorandum, Recommendation and Order, Docket Entry No. 70, pp. 13-14.

-10-

While under Gebser Title IX's notice requirements are undisputedly satisfied when a supervisor who has remedial power to discipline an alleged harasser has actual knowledge of the harassment, TSU has failed to cite any authority holding that notice to an official who the defendant school has designated to serve as its "compliance manager" is not also sufficient to satisfy Title IX's notice requirements. None of the case law that TSU cites in opposition to the Magistrate Judge's conclusion, including this court's opinion in Alegria, No. G-06-0212, 2007 WL 3256586, addressed the precise issue now before the court, *i.e.*, whether notice to a defendant's designated "compliance manager" is sufficient to satisfy Title IX's notice requirements. Courts that have addressed this issue have held that notice given to any employee whom the defendant school has designated to respond to harassment complaints is sufficient to satisfy Title IX's notice requirements. See Massey v. Akron City Board of Education, 82 F.Supp.2d 735, 744 & n.7 (N.D. Ohio 2000) (recognizing that "[t]he knowledge of a supervisor who has remedial power to hire, fire, and discipline an alleged harasser is sufficient," and noting that "[a] school also receives notice when notice is given to any employee whom the school has designated to respond to harassment complaints"); Flores v. Saulpaugh, 115 F.Supp.2d 319, 323 (N.D.N.Y. 2000) ("All education programs receiving federal financial assistance must designate at least one employee to investigate complaints of sexual harassment and must 'adopt and publish

-11-

grievance procedures providing for prompt and equitable resolution of student and employee complaints' of harassment. 34 C.F.R. § 106.8(a)-(b). Thus, Title IX's notice requirement is most obviously met when sexual harassment complaints are reported directly to the Title IX officer."); and Wilborn v. Southern Union State Community College, ___ F.Supp.2d ___, 2010 WL 1294131, *22 (M.D. Ala. March 30, 2010) ("[A] recipient of federal funds should not be able to construct a grievance procedure so as to shield itself from Title IX liability.").

In Williamson v. City of Houston, Tex., 148 F.3d 462, 466 (5th Cir. 1998), the Fifth Circuit reached an analogous conclusion in an employment context. There, the Fifth Circuit stated:

> [w]hen an organization designates a particular person or persons to receive harassment complaints, it sends a clear signal that those persons have the authority to accept notice of harassment problems. . . [T]he Supreme Court emphasized that the primary objective of Title VII is to prevent discrimination from occurring, . . . and that the statute "is designed to encourage the creation of antiharassment policies and effective grievance mechanisms," . . . To allow employers to escape liability when, as here, the complainant followed the employer's policy for reporting harassment would undermine these goals.

148 F.3d at 466-67. The Fifth Circuit explained that

> [a]n employer cannot use its own policies to insulate itself from liability by placing an increased burden on a complainant to provide notice beyond that required by law. . . If the employer has structured its organization such that a given individual has the authority to accept notice of a harassment problem, then notice to that individual is sufficient to hold the employer liable.

Id. at 467.

Plaintiff complained about Dr. Ramesh's alleged harassment to David.  TSU acknowledges that David served as the "compliance manager" identified in its Sexual Harassment/Retaliation Investigation Procedures as the person who possessed the authority and the obligation to initiate investigations of complaints of sexual harassment, draft initial and final reports, and submit reports to the accused's supervisor or to the Provost in the case of accused faculty members like Dr. Ramesh.[13]  Under TSU's Sexual Harassment/Retaliation Investigation Procedures, "[i]f there has been a finding of sexual harassment and/or retaliation, the supervisor or provost decides the appropriate sanction."[14]  While David did not posses the authority to sanction Dr. Ramesh for sexually harassing the plaintiff, based on the authority that David possessed as the "compliance manager" identified in TSU's Sexual Harassment/Retaliation Investigation Procedures to investigate complaints of sexual harassment and to report the results of those investigations to the TSU officials who were empowered to decide the appropriate sanction upon findings of sexual harassment and/or retaliation, a reasonable juror could conclude that David possessed the requisite

---

[13]TSU's Objections, Docket Entry No. 71, pp. 8-9 (citing Exhibit 13 attached to Defendant Texas Southern University's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment and Brief in Support, Docket Entry No. 62).

[14]Exhibit 13 attached to Defendant Texas Southern University's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment and Brief in Support, Docket Entry No. 62, ¶ 6.

"authority to address the alleged discrimination and to institute corrective measures." Gebser, 118 S.Ct. at 1999. See also Massey, 82 F.Supp.2d at 744 & n.7; Flores, 115 F.Supp.2d at 323; and Wilborn, ___ F.Supp.2d ___, 2010 WL 1294131, at *22. See also Rosa H, 106 F.3d at 660 ("the relevant question is whether the official's actual knowledge of sexual abuse is functionally equivalent to the school['s] . . . actual knowledge). Accordingly, TSU's objection to the Magistrate Judge's conclusion that TSU is not entitled to summary judgment on grounds that David was not an "appropriate person" under Title IX will be overruled.

### III.  Conclusion and Order

For the reasons explained above, Texas Southern University's Objections to Magistrate Judge's Memorandum and Recommendations (Docket Entry No. 71) are **OVERRULED**.

Docket Call will be held on November 12, 2010, at 4:00 p.m. in Court Room 9-B, 9th Floor, United States Courthouse, 515 Rusk Street, Houston, Texas 77002.  The Joint Pretrial Order is due November 5, 2010.

**SIGNED** at Houston, Texas, on this 14th day of October, 2010.

SIM LAKE
UNITED STATES DISTRICT JUDGE